## 11795.  FAIR & MARTIN INCORPORATED *v.* BREWER.

1. It is the duty of the buyer to act promptly in making an examination of goods sent on his order, to see whether they comply therewith, and to give prompt notice to the seller of their rejection when found defective, if he intends to avail himself of that remedy. Where a buyer, on reception of goods sent on his order and after inspection of the goods, telegraphed immediately to the seller that he found them defective in certain particulars, but did not explicitly state that for this reason he rejected them, a letter written by the buyer on the second day after the sending of the telegram, confirming the telegram and making clear and certain the rejection of the shipment, was admissible as evidence in behalf of the buyer, (a) as a part of the res gestæ of the transaction, and (b) as relating to the question of due diligence in giving notice of the rejection.

2. Where a consignor sells the goods while in transitu to a person other than the original consignee, and directs the carrier, while still in possession of the goods, to deliver them to such purchaser, the carrier is bound to follow the direction.

DECIDED FEBRUARY 15, 1921.

Complaint; from Fulton superior court — Judge Ellis. July 1, 1920.

This is a suit on open account against Fair & Martin Incorporated, for the contract price of a car of tomatoes. There was a verdict for the plaintiff, and the defendant's motion for a new trial was overruled. The contract for the purchase of the tomatoes is contained in letters and telegrams between the parties. On April 18, 1917, the defendant, in Atlanta, telegraphed to Brewer, the plaintiff, in Homestead, Florida, asking for prices on tomatoes which Brewer might have "rolling" — that is, were on board cars coming north from Florida, which could be diverted to the defendant in Atlanta. In reply Brewer, on April 22 wired, that he had a car of tomatoes going west, "rolled Saturday night" containing 197 crates of "fancy," 183 crates of "choice," and 47 crates of "seconds," quoting prices on each grade. The terms "fancy", "choice," and "seconds" are current with the trade, describing grades of tomatoes. On April 23 the defendant telegraphed in reply: "Divert us car tomatoes shipped Saturday prices quoted confirm quick." Replying to this telegram, Brewer, on April 24, wired: "F. o. b. sale here confirmed Southern 120632 passed Jacksonville today and diverted to you. Tomatoes packed to color in ten days, inspect accordingly." On the day of the arrival of the car, April 25, the defendant made inspection of the tomatoes and wired to Brewer: "Southern 120632 arrived. Inferior quality large percentage showing black spots some green stock showing decay." This telegram was followed by a letter from the defendant to Brewer, dated April 27, 1917: "On the 25th we wired you that car of tomatoes Southern 120632 arrived and was rejected account of inferior quality. A large percentage showing black spots, and some of the green stock were showing decay. We regret very much that we should have trouble on our first car, but trust to be more successful next time. We can only use good stuff." This letter was excluded from evidence, on the defendant's objection that it was a self-serving declaration and

drew conclusions as to previous correspondence and construed previous correspondence. This ruling is complained of in the motion for a new trial, the defendant insisting that the letter should have been admitted, because it gave due and timely notice to Brewer of the rejection of the shipment on account of the inferior condition of the tomatoes, and because it confirmed the telegram as to their inferior quality and met the objection to that telegram that it was ambiguous on the point of rejection, making clear that the tomatoes were rejected because of inferior quality.

Another contention of the defendant was, that, this being a suit on open account, the plaintiff must show that the title to the tomatoes had become vested in the defendant when the suit was brought, and that the plaintiff had failed to carry this burden. The evidence of the plaintiff showed that the bill of lading had been taken by the seller in his own name, and that the car of tomatoes was consigned to his own order, and there was no evidence that it had been transferred to the defendant. The evidence did not show what had become of the bill of lading. The court charged that " if the railroad company agreed to and did offer to deliver the car to defendant without transfer of this bill of lading, then the failure to transfer the bill of lading would not of itself defeat the plaintiff's right of recovery, if he was otherwise entitled to recover. " Error is assigned on this charge, on the ground that there was no evidence on which to base it.

*Austin & Boykin,* for plaintiff in error.

*Green, Tilson & McKinney, C. W. Hager,* contra.

HILL, J. (After stating the foregoing facts.) 1. We think the court erred in excluding from evidence the letter of the defendant to the plaintiff, dated April 27, 1917. No objection was made to the introduction of this letter on the ground that it was a letter-press or carbon copy, and not the original. The objections urged were, ": that the letter was irrelevant and immaterial, and that it contained self-serving declarations, and drew conclusions as to previous correspondence and construed previous correspondence between the parties, and that the telegram which the letter sought to construe was in evidence and was the best evidence. " This letter was relevant and material on one of the controlling issues in the case. It is well established that " it is

the duty of the buyer to act promptly in making an examination of goods sent on his order, to see whether they comply therewith, and to give prompt notice to the seller of their rejection if found defective, if he intends to avail himself of that remedy." 23 Ruling Case Law, 1434, § 257. Fair & Martin had ordered the shipment of tomatoes diverted to them from the original destination, and this had been done by Brewer.. As soon as the carload of tomatoes arrived in Atlanta, Fair & Martin inspected them to see if they were as represented. This they had the right to do, and had been requested to do by Brewer. Immediately after inspection Fair & Martin wired Brewer that the tomatoes were of "inferior quality, large percentage showing black spots, some green stock showing decay." This telegram was clear as to the complaint that the tomatoes were of inferior quality, but it did not show that for this reason they were rejected by the purchaser. The letter following the telegram removed all doubt on this point, and made positive and clear the rejection of the tomatoes for the reason stated in the telegram and repeated in the letter. The letter following the telegram was a part of the res gestæ of the transaction. The evidence as to the quality of the tomatoes was in conflict. The character of the shipment made imperative the enforcement of the rule of law that the purchaser should give prompt notice to the seller of the rejection, and of the reason therefor. This point was in sharp issue between the parties, and the letter was illustrative of this issue, and should have been admitted. Besides, the letter was admissible without reference to the previous telegram. It was pertinent to the legal question as to whether the purchaser had exercised due and proper diligence in giving the seller notice of the rejection of the tomatoes because of their alleged defective condition, and this was for the jury to determine.

2. The second assignment of error is without merit. There was evidence upon which to predicate the instruction that, "if the railroad company agreed to and did offer to deliver the car to defendant without transfer of this bill of lading, then the failure to transfer the bill of lading would not of itself defeat the plaintiff's right of recovery, if he was otherwise entitled to recover." This was a suit on account to recover the contract price of the goods. It was essential to the seller's right of recovery to

affirmatively show that title to the tomatoes had passed to the purchaser, and it was insisted that this burden had not been successfully carried. It was contended that the evidence showed that the seller took the bill of lading in his own name, and that the car of tomatoes was consigned to his own order when the shipment was made to Cincinnati, and afterwards diverted to the defendant in Atlanta by express order given by the shipper to the carrier. The order to divert was complied with by the carrier, who actually delivered the shipment to the defendant in Atlanta. The actual transfer of the bill of lading by the seller to the purchaser, under these facts, was not essential. Notice by the shipper to the carrier to divert the shipment to the purchaser was equivalent to a transfer of the bill of lading. "A consignor of goods which have been shipped to a designated consignee has a right to direct a change in their destination, while the goods remain in the possession of the carrier, and the carrier is bound to obey such direction." Lewis v. Galena &c. R. Co., 40 Ill. 281.

We reverse the judgment refusing a new trial, because of the error discussed in the first division of this opinion.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*